Good morning, Your Honor. Zandra Lopez on behalf of Mr. Ponce. The out-of-court statements admitted at Mr. Ponce's trial were testimonial and were not exempted by the confrontation clause through the forfeiture by wrongdoing rule. The holding in the recent Supreme Court decision in Giles is not a new rule. The holding states that the forfeiture by wrongdoing rule applies only when the defendant had the intent to silence the witness. Counsel, we aren't deciding for ourselves directly whether this is a new rule. We're examining whether the state court's opinion that it was a new rule was unreasonable, and those are slightly different. Given the various ways that courts had analyzed this problem up until Giles was decided, why is the California court unreasonable in determining that it's a new rule? It's unreasonable for two reasons. First, Giles was dictated by prior precedent at the time of Mr. Ponce's case. I think we need to turn the microphone up just a little. Okay. Could you hear me better now? Yes. Yes? Okay. First, Giles was dictated by prior precedent, and that's Reynolds. And second, it was an unreasonable application of prior precedent, including Reynolds and Crawford. And I'll address the second issue because I believe that's more of the question. The courts of appeals around the country had gone, well, each way on whether Reynolds and Crawford, you know, what this rule was, whether it should be what Giles said. So are half the courts unreasonable? Well, I think, unfortunately, many of the cases, such as Meeks, which was decided in the 28-J letter by the respondent, was an unpublished opinion, and the appellant was pro se. And there was no discussion as to whether Giles was an old rule. There was no discussion regarding Reynolds. There was no discussion regarding the prior common law. None of that was there. There are – there is district court rulings in California that are cited in the briefs that indicate that this is not a new rule. And it's not a new rule because it's different from other cases that have dealt with this issue, such as the cases cited by the respondent. But can I just ask you a question? Aren't there other rules of evidence that would allow this statement to come in? You know, like excited utterance, maybe a business record, maybe the security people wrote something down, maybe a sense of impending death. That's all. And you've got defense – then you have this – well, you have the one in this case, and forfeiture by wrongdoing. There's a whole plethora of rules, and the residual exception to the hearsay rule. Well, Your Honor – I mean, this is a great bar exam question, and I don't know why excited utterance doesn't make that statement admissible. Well, Your Honor, first of all, the court of appeals actually found this to be testimonial, and that's the State court of appeals, because – Maybe that's the part that was unreasonable. Well, they found that these statements were applicable based on the forfeiture by wrongdoing. And under Crawford, those – it went that way because it must have found that it was testimonial. Tell me why excited utterance doesn't fit in here. There wasn't anything that was – it was not at all excited utterance. She got a call that he's going to come over and kill her, and she's boarding up the sliding door in the back, and she's making calls, and they're up there. She's scared of him. She had a restraining order out on him, huh? She's frightened. She's scared. She told that to these people. First Your Honor, I think they're not – excited utterance does not apply because it is testimonial. She gave these statements to a security guard and – It doesn't make a difference who you give it to. You know, you can give it to a perfect stranger. If it's an excited utterance, it comes in. Well, actually, Your Honor, if it is based on – if it is a testimonial statement like in Crawford that was given to law enforcement with reasonable expectation that it would be later used for prosecutorial reasons, then it is testimonial. Well, Your Honor, counsel, she had a purpose in calling the security people because she wanted them to patrol more frequently. Correct. If that was the purpose of her call, it's not testimonial. She's asking them to do something. And also, Your Honor, if I may, also in her statement, she informed the manager that she wanted this. She informed him of the name, but she also informed him that there was a restraining order against him, and it could be reasonable. That's what she ought to – she wants a security officer to do something, so she needs to tell him that this guy is dangerous, and she was able to get a restraining order. That's the way I read that. And then he's saying, no, he's going to kill that bitch, or the way he talks. That's correct, Your Honor. I don't know whether anybody, whether the security officer wrote down whether his job requires him to write down. Well, interestingly, Your Honor, in regards to the excited utterance, the facts as presented at the trial did not necessarily indicate that it was an excited utterance because the manager's reaction when he heard the statement was not immediate. He did not immediately go to her apartment to see how she was doing. He didn't call the police. It was her stating something that had happened in the past, a call that she had received in the past. She got the call from the guy, and she was putting boards up on the – that's when they heard the noise, too. And, you know, here's another hearsay exception. Under unavailability of witness, unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity. And you've got forfeiture by wrongdoing. The statement – well, that's the one we're talking about. A statement offered against a party that is engaged or acquiesced in wrongdoing that was intended to and did procure the unavailability of the declarative as a witness. I mean, you know, this is like the story of the kid that killed his mother and father and then asked for mercy because he was an orphan. Well, Your Honor, and Your Honor is addressing the same issues that are addressed in Files. What the state court found was that because he was found to have killed her, that he could not invoke his confrontation right. But Guile says that's wrong. Guile says even though she's unavailable, what has to be shown is that he caused the wrong by intending to keep her silent. And that is the rule as Guile set forth. Well, no, he killed her. But there was no showing whatsoever that his intent – Your Honor, but then that would be applicable to all cases and Guile's would have no force whatsoever. What Guile says is that there has to be an actual – I'm not that excited about Guile's. You can always get the intent from the act. Something can go to the jury. I don't think any jury would have much problem in a situation like this or others where a key witness is murdered, finding that that was the intent of the killer. Well, Your Honor, I see all you have – Intent, you don't have to – it doesn't have to be words. Words or deeds, you can imply it and all the rest of it. Most of the time, you know, intent can't look into someone's brain or mind. That's part of the instruction. I don't know. It just seems to me there's a lot of ways it could come in. And I actually see that I have no time remaining of it. Well, we'll give you a little rebuttal time. Thank you, Your Honor. They have trouble today in law school. Nobody teaches evidence. They just give you something to read. Good morning, Your Honor's Deputy Attorney General Stephanie Brennan. Good morning, Your Honor's Deputy Attorney General Stephanie Brennan. On behalf of Respondent Appali, the warden, may it please the Court. This Court should affirm the district court's judgment because, first, as Judge Baber sort of pointed out, here the issue is whether the state court's adjudication of that Confrontation Clause claim was an unreasonable application of controlling Supreme Court authority as it existed at the time of the state court's decision. And our position is that that evidence were admissible under other provisions of the evidence code. Under sort of hearsay exceptions? Whatever. It could have been. Sure. It could have been. Why don't you just argue that so we don't have to bring jowls into play? Well, I think we need to bring jowls into play. Why? Well, for the reason that what we have is a Sixth Amendment claim. And it can only be a Sixth Amendment Confrontation Clause claim if it was testimonial under Crawford, which here it wasn't. Otherwise, it would just be a state law error. Well, if it meets exceptions to the hearsay rule, then you don't need to worry about the Confrontation Clause. Exactly. Yeah. There would be. Why don't you just point out the exceptions to the hearsay rule? Well, I think here, too, there were those exceptions. Think about it. The prosecutor, in fact, at the trial court, that was one of his arguments, is that it was a state-of-mind exception to the hearsay rule and that it was non-testimonial under Crawford. The state trial court found that it was non-testimonial under Crawford and, therefore, let it in. I don't believe there was exactly a ruling by the trial court on the hearsay exception, but found that it was non-testimonial. And for that reason, if we didn't even address the issue of guiles and, therefore, didn't have to get to whether it's a new rule or not, we can go to the state court's adjudication that this was not testimonial and, therefore, there was no Confrontation Clause violation here. Well, did the prosecutor do research on this and then present a memorandum to the court with a copy to counsel? My understanding is that this trial was in 2004. I think it was the 402 hearing on it. Not so long ago. No, but it was just within a few months of Crawford being decided. And at that point in time, guiles, of course, didn't exist for another four years. In fact, guiles didn't exist until after the district court, in this case, entered judgment. It's only after that that guiles came into being. Therefore, when we look at what was existing at the time of the state court's adjudication, what we have is Crawford, and before that we have then Reynolds. And under both of those bases, one, the trial court in finding that it's not testimonial was reasonable. And, second, the court of appeal, it found that the forfeiture by wrongdoing doctrine applied under what was then existing Supreme Court authority at the time, which all that we had was Crawford, which affirmed what had happened in Reynolds, which talked about inequitable terms. I have, we're in a funny position because we're really reviewing, in a sense, the California court of appeal decision and not directly what happened at the trial. But the California appellate decision gave an alternative reason for its holding, which was, excuse me, harmless error. That even if the statement had been admitted incorrectly, all the remaining evidence, including the DNA evidence and the blood and the bleach and all the physical evidence, it would have made no difference at all. Is that an alternative basis for our decision? Is that available to us as we review this? Yes, it is. Because in habeas, we're always going to look at if there is, assuming there's a confrontation clause violation, that is subject to a harmless error analysis. And here, in what the court of appeal found, there was harmless error, given there was just overwhelming evidence of his guilt. There was the testimony of the girlfriend testifying about the victim's threats to them, that she was going to turn them over to authorities, and then the defendant's resulting anger. And in a way, as what your Honor, Judge Ferguson, was talking about of intent, we can, even if we were to look at Giles in this situation, you can sort of bring that in, of the reason that he kills her, is because he wants to silence her, does not want her to be a testifying witness. So we could even reach that. But going to all the other evidence, where we have, additionally, just before the murder of the defendant telling a friend, I have to go kill some bitch now. And then the victim is murdered by being stabbed 30 times, and stabbed with such force that he breaks the knife off in her neck. And there's blood everywhere. And then on the same day as the murder, the defendant gets into a car accident, and a passerby sees him with injuries to his hand, which he says, do not have anything to do with that accident, but rather was something that occurred earlier in another incident. He has a bloody hand, which, given the way in which she was murdered, it's clearly plausible that the reason he has that injury is because he just stabbed her 30 times. In terms of the frequency with which the Giles issue comes up, even if we could avoid deciding it, in your view, should we go ahead and decide it for the sake of not only this case, but future cases? Does it come up often enough? I think it does come up often enough. I think also under Kaspari that this Court is required to address sort of that Teague-Giles issue of whether it is a new rule, and whether, therefore, here, that the state courts reasonably applied existing Supreme Court authority. I think this Court should address that issue, especially given that there was such a confusion in the lower courts and the lower federal courts as to whether it applied or not, and the possibility that this is going to be coming up before this Court. And just as the Tenth Circuit did, it should decide this issue. We're not supposed to reach for issues, you know, constitutional issues, if we can decide a case on another basis. True, although in Kaspari, the Supreme Court tells us that we do need to address this issue of Teague. And therefore, that reason, given this case, that it should be something that we should address. And in addition to the fact that we have the other basis of finding that it was non-testimonial and also that it was harmless error, given, again, just the overwhelming evidence of his guilt. In respect to whether Giles is a new rule or not, in Giles itself, it goes back and says all of this traditional stuff and that you had to have intent. It seems to me the only way that we would find that Giles is a new rule is that in recent times there has been a lot of confusion about it and a lot of cases which have indicated that intent was not necessary. So it seems to me if we were to decide that Giles were a new rule, that would be the way we would have to go, I think. Yes, that there was the confusion that it created a new obligation. And additionally, I think as that Tenth Circuit case sort of pointed out, is that here Giles is, if anything, sort of a subsidiary of Crawford. And if the Supreme Court found that Crawford was a new rule that wasn't retroactive in Bakkening, then how could Giles be so? I mean, or that it would have to follow the same path in the sense that it is a new rule that can't be retroactively applied. So for those reasons that it is a new rule, that there was such confusion amongst lower courts, that there were three dissents in Giles itself that sort of militates for finding that it's a new rule, that it wasn't dictated by precedent. Sure, it's based on common law, but again, that can be said of Crawford as well. Now, turning to Judge Fragerson's point that we can easily decide it without reaching Giles, do you agree with that? I believe that we can decide it in finding that it was non-testimonial, therefore, there's no confrontation clause violation here. Therefore, Crawford doesn't apply. Therefore, Giles doesn't apply. Can we really do that, though? Because we're reviewing what the California court did, and the California court didn't do that. Well, it was only the California trial court that talked about it being non-testimonial. I know that, but we review, don't we review the last reasoned decision, which is the California court of appeal opinion, and it dealt only, as I read it anyway, with two things. It dealt with the question of forfeiture by wrongdoing, which it said was satisfying, and it dealt with harmless error. Yes. In the AEDPA context, can we go behind those two reasons to find some other reason? I believe that you can because the overall claim is a confrontation clause claim, correct? It's whether the State courts were reasonable in the adjudication of that claim. And this Court can affirm on any grounds supported by the record. And therefore, if it's not testimonial, then it can't be a confrontation clause claim. And secondly, although the California court of appeal decided it, speaking only in terms of forfeiture and then skipping and going directly to harmless error, you can also be read of saying that it left undisturbed the trial court's finding that it was not testimonial under Crawford. But how could it do that and deal with forfeiture by wrongdoing? That's the issue, isn't it? Because forfeiture only comes into play if it's testimonial or not. That's where I get hung up. Yeah. But I think overall what we can look at is that its decision with regard to the overall confrontation clause claim was reasonable. And there are various bases on which this Court can find that, yes, the State courts were reasonable in denying that claim. And those are those three reasons of forfeiture, non-testimonial, and harmless error, for all of those reasons. So this Court should find that, yes, the State courts were reasonable and thus affirm the district court's denial of habeas relief in this matter. Well, I asked you this question. And are you sure that the prosecutor, when he sought to introduce this evidence, didn't back it up with a memorandum? You know, I'd have to go back and look at the clerk's transcript to see if there was a written memorandum. However, there was the pretrial hearing specifically with regard to these, the admissibility of these statements in light of the recent, then-recent decision in Crawford talking about whether it was going to fall under what the prosecutor said of a state-of-mind exception under California Evidence Code 1250, I believe, and his second argument that it was not testimonial hearsay under Crawford. It was another basis. And it was the trial court that found state-of-mind. Statement of declarants then existing mental or physical state. Which, as Judge Fletcher was talking about, the fact that why she's making these statements is because she's seeking to explain why she needs extra patrols done and why she's found boarding up the windows to her home. Yeah. Well, I can come in under that. Exactly. That would have been very simple. And it could have been, but as this is, you know, a very tricky question, especially at the time then where the law seemed a bit unclear. And for those reasons, the state court was reasonable in its determination of what was going on at the time. So. All right. Thank you. Thank you, Your Honors. Your Honor, I'll keep my comment. We'll give you a little extra time because the State overran its time. Thank you, Your Honor. Your Honor, in regards to the Tenth Circuit's opinion regarding the retroactivity of Files, it's true that the Tenth Circuit found that it was similar to Crawford regarding retroactivity, but Rock Crawford was completely distinguishable from Giles. Crawford overruled Supreme Court precedent, specifically overruled Roberts. And, yes, it was setting forth a new rule. Here, Giles is this long jurisdiction, long history of what the rule of forfeiture by wrongdoing actually was. And, moreover, at the time of Mr. Ponce's case, Crawford was the applicable law. And Crawford stated that the Sixth Amendment does not suggest an open-ended exception for the confrontation requirement to be developed by the courts. The only exceptions permitted are those set forth in common law. And Giles goes on for pages and pages indicating how the rule of forfeiture, as it sets forth, was explicit in common law. And based on that, I submit, Your Honor. All right. Thank you. The matter stands submitted.
judges: Fletcher B. , Pregerson, Graber